IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00163-KLM

ZYKRONIX, INC., a Colorado corporation,

     Plaintiff,

v.

CONEXANT SYSTEMS, INC., a Delaware corporation,

     Defendant.

_____

**ORDER**

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendant's **Motion for Summary Judgment or, In the Alternative, Partial Summary Judgment** [#78][1] (the "Motion"). Defendant filed a Response [#93] in opposition to the Motion [#78], and Plaintiff filed a Reply [#97]. The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#78] is **GRANTED in part** and **DENIED in part**.

**I. Summary of the Case**[2]

---

     [1] "[#78]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

     [2] The following summary construes the evidence in the light most favorable to Plaintiff, as the nonmovant. *See Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1186 (10th Cir. 2015) ("We . . . recit[e] all summary-judgment evidence in the light most favorable to . . . the nonmovant."). To the extent that Plaintiff has not directly disputed Defendant's recitation of the facts, the Court cites to the Motion [#78].

Plaintiff Zykronix, Inc. ("Plaintiff") is a Colorado corporation doing business in Colorado and Taiwan. *Joint Amendment to Section 4 of the Scheduling Order* [#46]. Defendant Conexant Systems, Inc. ("Defendant") is a Delaware corporation doing business in California whose registered agent is in Colorado. *Id.* Defendant was authorized to do business in Colorado until June 30, 2015. *Id.* In early 2012, Plaintiff entered into an agreement with a third-party named Home Automation, Inc. ("HAI"), pursuant to which Plaintiff agreed to design and manufacture for HAI a home automation product later called the OmniTouch 7. *Motion* [#78] ¶ 1. HAI was later acquired by Leviton Manufacturing, Co. Ltd. ("Leviton"). *Id.* ¶ 3. Plaintiff met with Defendant in March 2012 because it needed an audio chip for the OmniTouch 7, and the parties executed a Non-Disclosure Agreement. *Id.* ¶ 2. On March 26, 2013, Plaintiff sent Defendant a Purchase Order (the "Purchase Order") via email for 10,400 chips, after which Defendant delivered the chips to Plaintiff. *Id.* Plaintiff thereafter installed the chips in 10,000 OmniTouch 7 devices and delivered them to Leviton for sale on the retail market. *Id.* ¶ 6. Eventually, a "loud buzzing noise" was discovered in some of the devices.[3] *Id.* ¶ 9; *Response* [#93] at 10. Plaintiff alleges that Leviton began returning devices that emitted the noise in approximately January 2015, and that the noise was determined to originate from the chips.[4] *Response* [#93] at 5-6.

Plaintiff is seeking damages from Defendant for alleged past and future costs incurred due to the allegedly defective chips. *Compl.* [#2] at 3. Plaintiff asserts two claims

---

[3] The parties dispute when the "loud buzzing noise" was discovered, but that issue is not material to the issues presented in the Motion [#78].

[4] These allegations are supplied from Plaintiff's Response [#93] because they are disputed by Defendant, yet are critical to understanding the issues underlying this lawsuit.

against Defendant: Claim One is for breach of contract, and Claim Two is for breach of warranty. *Id.* at 3-4. Defendant moves for entry of summary judgment on the breach of contract claim because it contends that there is no enforceable "contract" between the parties. *Motion* [#78] at 10-12. Defendant moves for entry of summary judgment on the breach of warranty claim on the grounds that a warranty of fitness for a particular purpose does not apply because the chips were purchased for their ordinary purpose. *Id.* at 12-13. Defendant further argues that Plaintiff cannot establish that its damages were caused by Defendant, and that Plaintiff has been released from its obligations to provide repairs to its product via a settlement agreement in a separate matter. *Id.* at 13-19.

## II. Defendant's Objections to Evidence

Defendant asks the Court to disregard all of the 26 exhibits attached by Plaintiff to its Response [#93]. Defendant first argues that the Affidavit of David Ghaemi [#93-1] (the "Ghaemi Affidavit") submitted by Plaintiff should be stricken because it contains unsupported conclusions, hearsay, statements not founded on personal knowledge, and self-serving assertions that are not corroborated by evidence. *Reply* [#97] at 1-2. Defendant further argues that Exhibits 2 through 26 "have not been authenticated, they lack foundation, and they are hearsay." *Id.* at 2.

With respect to the Ghaemi Affidavit [#93-1], Fed. R. Civ. P. 56(c)(4) requires that an affidavit be made on personal knowledge, show that the affiant is competent, and include facts that would be admissible at trial. Defendant does not provide any explanation of why it believes that the Affidavit, which was provided by Plaintiff's Chief Executive Officer ("CEO"), does not comply with these requirements. On the Court's review of the Affidavit, it is apparent that Mr. Ghaemi is competent to testify to the facts, the facts appear to be

admissible, and it is plausible that Mr. Ghaemi has personal knowledge of the facts stated, given that he is Plaintiff's CEO. *See Ghaemi Affid.* [#93-1]. Accordingly, the Court overrules Defendant's objections to the Affidavit.

Defendant also raises specific objections to the March 26, 2013 Purchase Order [#73-7]. First, Defendant argues in the Reply that the Purchase Order should not be considered by the Court because it has not been properly authenticated. *Reply* [#97] at 2, 5. To the extent that Defendant argues that the Purchase Order must have been authenticated by affidavit, there is no such absolute requirement. *See Law Co., Inc. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1171 (10th Cir. 2009) (stating that "no authenticating affidavit is required" and explaining that "exhibits might be sufficiently authenticated taking into consideration the '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances'"). Additionally, Defendant does not argue that the Purchase Order is anything other than what Plaintiff asserts it is.[5] Moreover, Defendant in fact submits a copy of the Purchase Order with the Motion, *see* [#79-17], and cites to it in the Undisputed Facts section of the Motion in support of the following facts: ". . . on approximately March 26, 2013, [Plaintiff] issued a purchase order for the purchase of 10,400 of [Defendant's] CX-20709-21Z audio CODEC chips . . . for the price of $2.89 per Chip." *Motion* [#78] at 3. Furthermore, Defendant

---

[5] Defendant argues that the Purchase Order attached to the Complaint is not the version allegedly sent in March 2013 because it includes notes titled "Revision 2" and "Revision 3," dated December 13, 2013. However, Defendant has not explained how the terms of the original Purchase Order were different from Revision 3. The plain language of the Purchase Order [#79-17] states that the "Required Dates" were changed; the deposition testimony of Wilfriend Streicher ("Streicher") also states that the revisions solely changed "required dates." *Streicher Depo.* [#83-17] at 5.

provides part of the transcript from the deposition of Mr. Streicher, who testified that he was the preparer of a March 26, 2013 Purchase Order and that the document "is a Revision 3, as you can see on page 2, and is not the original purchase order which was sent to [Defendant] in March of 2013." *Streicher Depo.* [#79-16] at 4. Although relevant parts of the deposition testimony are cut short, the Purchase Order matches Mr. Streicher's description of the document that he was examining. Thus, it appears that the Purchase Order was properly authenticated, and it is likely that the exhibit is admissible at trial. *See Alfonso v. SSC Pueblo Belmont Operating Co., LLC*, No. 11-cv-01186-PAB-KLM, 2012 WL 2863128, at *1-2 (D. Colo. July 11, 2012) (explaining the changes caused to Rule 56 by amendments in 2010, and rejecting a party's authentication argument where a sufficient method had been proposed by which an exhibit might be admitted at trial); *see also Shipman v. Carrasco*, No. 15-CV-167-BRB-KBM, 2016 WL 10100732, at *2 (D.N.M. July 19, 2016) ("Significantly, the objection contemplated by [the 2010 amendment to rule 56(c)(2)] is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be."). For these reasons, the Court overrules Defendant's evidentiary objections to the Purchase Order and will consider it in connection with this Motion [#78].[6]

With respect to the other 24 exhibits, Defendant essentially makes a blanket statement that they have not been properly authenticated, lack foundation, and are hearsay. *Reply* [#97] at 2. Defendant provides no further explanation of what specific objections apply to each exhibit, which consist of varied documents including: the

---

[6] To the extent that Defendant argues that the Purchase Order either does not constitute a contract, or does not represent the terms of the parties' agreement, that issue is addressed in the Analysis section below.

agreement between Plaintiff & HAI, Plaintiff's Warranty and Repair Program Standard Terms and Conditions, emails, internet printouts, deposition excerpts, reports on Defendant's letterhead, interrogatory responses, and more. *See Reply* [#97] at 2. As discussed above, with respect to authentication, "[t]here is no requirement that the evidence be actually admitted or authenticated for the Court to consider it on a motion for summary judgment, as long as it would be admissible if duly authenticated." *Digital Advert. Displays, Inc. v. Newforth Partners, LLC*, No. 12-CV-00682-WJM-MEH, 2014 WL 1292931, at *3 (D. Colo. Mar. 31, 2014). Similarly, with respect to Defendant's foundation and hearsay objections, Fed. R. Civ. P. 56(c)(2) provides that parties may object that cited material "cannot be presented in a form that would be admissible in evidence." Defendant has not objected that the material *cannot* be presented in an admissible form, and the Court sees no reason why the documents would not be admissible at trial.[7] Thus, Defendant's vague objections to Plaintiff's Exhibits 2-6 and 8-26 are overruled.

### III. Motion for Summary Judgment

**A.  Legal Standard**

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(a), summary judgment should enter if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

---

[7]  The Advisory Committee's Note to the 2010 Amendments to Rule 56(c)(2) clarifies that a party retains its right to challenge at trial the admissibility of evidence considered at the summary judgment stage. Thus, Defendant may make any evidentiary objections it wishes at that time.

An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank*, *N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. See 10B Charles Alan Wright, et al., *Federal Practice and Procedure* § 2738 at 356 (3d ed.

1998).

**B.    Choice of Law**

The Court has diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332.  *See Notice of Removal* [#1]; *Compl.* [#2]; *Scheduling Order* [#41] at 2.  Based on the parties' briefing,[8] they appear to agree that Colorado law controls this diversity action.  Therefore, the Court applies Colorado substantive law.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (applying choice of law rules of the forum state in diversity case); *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180-81 (10th Cir. 2007) ("The parties agree that the applicable substantive law is that of Colorado . . . .  We therefore assume that this case is governed by Colorado substantive law.").

**C.  Analysis**

**1.    Breach of Contract**

To recover on a breach of contract claim, a party must prove (1) the existence of a contract, (2) that the party performed its duties under the contract, (3) that the other party failed to perform its contractual obligations, and (4) damages resulting from the breach. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).  Here, Defendant argues that summary judgment should enter in its favor because Plaintiff has not sufficiently shown the existence of a contract on which a claim for breach of contract could be based.  *Motion* [#78] at 10-12.  Plaintiff argues that the March 26, 2013 Purchase Order for the chips constituted an offer, and that the shipment of the chips constituted an acceptance.

---

[8]  Both parties cite to Colorado law in their briefs.  Additionally, Plaintiff states in a footnote: "[Plaintiff] contends that Colorado law controls this matter."  *Response* [#93] at 13 n.1.  Defendant does not contest that statement in its Reply [#97].

-8-

*Response* [#93] at 13-14.

The Colorado Uniform Commercial Code (Colo. Rev. Stat. § 4–2–206(1)(b)) provides:

> An order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods, but such a shipment of nonconforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only as an accommodation to the buyer.

Defendant argues that this statute should be entirely disregarded because the Central District of California ruled that "the parties have exchanged conflicting forms," and that therefore Section 2207 of the California Commercial Code applies. *Reply* [#97] at 5. However, the California court made that ruling on considering whether the parties had agreed to an arbitration clause, which is not relevant to the issue currently before this Court. *See C.D. Cal. Order* [#93-22] at 4-6. Furthermore, Section 2207 of the California Commercial Code is clearly not relevant here, as that section pertains solely to the issue of whether additional terms included in the *acceptance* of a contract are controlling. Lastly, as determined above, the Court applies Colorado substantive law in this lawsuit. Thus, the Court finds that Colo. Rev. Stat. § 4–2–206 applies here, and that there is a genuine issue of material fact regarding whether the Purchase Order and Defendant's subsequent shipment of the goods respectively constitute the requisite offer and acceptance to constitute formation of a contract. *See* Colo. Rev. Stat. § 4–2–206; *see also Liquid Magnetix Corp. v. Therma-Stor LLC*, No. 13-cv-3151-WJM-KMT, 2014 WL 1389984, at *2 (D. Colo. April 9, 2014) (finding a contract where purchase orders constituted offers and shipment of the goods constituted acceptance). To the extent that Defendant argues that

Revision 3 of the Purchase Order does not represent the terms of the parties' agreement, a genuine dispute of material fact remains with respect to that issue as well. *See Reply* [#97] at 5 (arguing that Plaintiff cannot "establish that the Purchase Order attached to its Complaint was the operative agreement" and noting that it was "not even the version allegedly sent in March of 2013"); *Anderson*, 477 U.S. at 248.

Defendant next argues that Plaintiff's designated expert on the issue of "all oral or written agreements," Mr. Ghaemi, testified during his Fed. R. Civ. P. 30(b)(6) deposition that he did not know of any agreements or contracts that Plaintiff had with Defendant except for the 2012 Non-Disclosure Agreement. *Motion* [#78] at 11; *Ghaemi Depo.* [#83-20]. Defendant contends that Mr. Ghaemi's testimony therefore demonstrates that the March 26, 2013 Purchase Order should not be construed as a contract. *Motion* [#78] at 11. Defendant further argues that Mr. Ghaemi was unable to "discuss the most basic terms of the [2013] Purchase Order," which also demonstrated that the Purchase Order is not the contract at issue here. *Motion* [#78] at 12. Plaintiff contests Defendant's arguments.

This is essentially a dispute about whether Mr. Ghaemi's testimony that he was unaware of any agreements or contracts between the parties other than the nondisclosure agreement qualifies as a binding judicial admission. "Judicial admissions are 'formal, deliberate declarations which a party or his attorney makes in a judicial proceedings for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute.'" *Asarco, LLC v. Noranda Mining, Inc.*, 844 F.3d 1201, 1212 n.3 (10th Cir. 2017) (quoting *U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833 n.4 (10th Cir. 2005). For a statement to qualify as a binding judicial admission, it must be "deliberate, clear, and unequivocal." *Skyline Potato Co. v. Rogers Bros. Farms, Inc.*, No. 10-cv-02353, 2011 WL

2791531, at *6 (D. Colo. July 15, 2011).

Mr. Ghaemi's testimony reads as follows:

Q: Other than the written nondisclosure agreement, in your mind what – what agreements, what contracts did [Plaintiff] have with [Defendant]?
A: None.

*Ghaemi Depo.* [#83-20] at 5. Mr. Ghaemi also stated:

Q. So would you say that Mr. Streicher would be in a better position to testify as to Zykronix's understanding of the meaning of this purchase order?
A. What do you mean by "meaning of this purchase order"?
Q. Well, I mean, it's a purchase order that Zykronix issued.
A. Right.
Q. And so I'm trying to understand whether this is simply a purchase order that gives Zykronix the right to submit orders for a certain quantity at a certain price or whether it is a purchase order that contractually commits Zykronix to buy the full number of chips.
A. I don't know, but it was very obvious for at least my – my understanding was that, you know, if it wasn't working, we cancel the PO.

*Id.* at 6-7. Reading the record in the light most favorable to Plaintiff, Mr. Ghaemi's testimony is not unequivocal that the Purchase Order did not constitute a contract, and, therefore, his testimony does not qualify as a binding admission. *See id.* Although, as quoted above, Mr. Ghaemi testified early on in the deposition that he was unaware of contracts or agreements other than the 2012 Non-Disclosure Agreement, Plaintiff's entire case is apparently premised on the Purchase Order, which is the sole document attached to the Complaint [#2] asserting breach of contract. Additionally, as discussed above, there is a material factual issue regarding whether the Purchase Order constituted an offer and the shipment of the goods constituted acceptance. *See Liquid Magnetix*, 2014 WL 1389984, at *2. When asked about the Purchase Order, Mr. Ghaemi stated that his "understanding was that, you know, if it wasn't working, we cancel the PO." *Ghaemi Depo.* [#83-20] at 7. The idea that the Purchase Order could be cancelled "if it wasn't working"

supports Plaintiff's argument that it constituted an agreement between the parties. Accordingly, Mr. Ghaemi's statement does not dispense with "facts about which there is no real dispute." *See Asarco*, 844 F.3d at 1212 n.3.

Moreover, it appears that Defendant is attempting to argue that Mr. Ghaemi's testimony is sufficient to establish the non-existence of a legally binding contract. However, not only is there no evidence that Mr. Ghaemi is an attorney competent to render such an opinion, but even if he was, the existence *vel non* of a contract is a legal decision left to the finder of fact when the issue is disputed (as it is here). *See Lawton v. Hotspur Sports Co., Inc.*, No. 16-CV-00570-RM-KMT, 2017 WL 2672110, at *6 (D. Colo. June 21, 2017). Mr. Ghaemi's opinion, as expressed in his deposition, may be considered in reaching such a determination, but it is not dispositive. *See id.* (stating that when "the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists") (citation omitted). Viewed properly, Mr. Ghaemi's testimony merely confirms the existence of a genuine issue of material fact about whether there was a contract between the parties or not. Thus, the Court concludes that Mr. Ghaemi's deposition testimony does not definitively establish that the Purchase Order does not constitute a contract.

Lastly, Defendant argues that Plaintiff must "identify a provision in the alleged agreement that required the Chips to perform properly for a given amount of time and then show that the Chips did not perform properly for that amount of time" in order to establish a breach of contract. *Reply* [#97] at 6. As an initial matter, the Court need not address this argument because it was not raised until Defendant filed its Reply. *See Cahill v. Am. Family Mut. Ins. Co.*, 610 F.3d 1235, 1239 (10th Cir. 2010) (stating that "arguments first raised in a reply brief come too late"); *Ulibarri v. City & Cty. of Denver*, 742 F. Supp. 2d

1192, 1218 (D. Colo. 2010) (argument first raised in reply brief may be disregarded). Additionally, Defendant does not cite any legal authority, nor is the Court aware of any, supporting Defendant's contention that such a specific provision is required for formation of a legally enforceable contract. *Cf. E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872 (1986) ("Therefore, a claim of a nonworking product can be brought as a breach-of-warranty action. Or, if the customer prefers, it can reject the product or revoke its acceptance and sue for breach of contract."); *McKinley v. Willow Const. Co., Inc.*, 693 P.2d 1023 (Colo. App. 1984) (affirming trial court's ruling that construction company was liable for breach of contract due to defects in roof construction). Thus, the Court cannot conclude that such language was required to be part of the agreement in order for Plaintiff to be entitled to assert a claim for breach of contract.[9]

Accordingly, the Motion [#78] is **denied** with respect to Plaintiff's breach of contract claim.

### 2. Breach of an Implied Warranty of Fitness for a Particular Purpose

The heading of Claim Two of the Complaint states "Breach of Warranty," and explains that "[t]he Chips were sold by [Defendant] with an implied warranty that the Chips would function for the purpose they were intended." *Compl.* [#2] at 4. In the briefing on the Motion, the parties appear to agree that Plaintiff is asserting a claim for implied warranty

---

[9] Defendant similarly argues that Plaintiff has not sufficiently shown that the chip was defective in the first place because "it is undisputed that the Chips worked properly for at least a year." *Reply* [#97] at 6 n.6. For a product to be found to be defective, there is no requirement that it work properly for less than a year. *See, e.g.*, *Broomfield Senior Living Owner, LLC v. R.G. Brinkmann Co.*, No. 16CA0101, 2017 WL 929933, at *6, (Colo. App. Mar. 9, 2017), *reh'g denied* (Apr. 20, 2017), *cert. denied*, No. 17SC351, 2017 WL 3868161 (Colo. Sept. 5, 2017) (finding that "breach of contract claim accrued upon the 'physical manifestation of a defect'" for statute of limitations purposes).

-13-

of fitness for a particular purpose.

The Colorado Uniform Commercial Code (Colo. Rev. Stat. § 4–2–315) provides:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under section 4-2-316, an implied warranty that the goods shall be fit for such purpose.

The Editors' Notes explain that a "particular purpose" is found when there is "a specific use by the buyer which is peculiar to the nature of his business," whereas an "ordinary purpose" is the one "customarily made of the goods in question." Colo. Rev. Stat. § 4–2–315 editors' note (2). The Notes give an example that shoes are ordinarily used for the purpose of walking on ordinary ground, but that a "particular purpose" may be found where a seller knows that a certain pair was selected to be used for climbing mountains. *Id.* To establish a claim for violation of this implied warranty, a plaintiff must show that: (i) the defendant impliedly warranted the product to be fit for a particular purpose; (ii) the plaintiff was reasonably expected to use the product; (iii) the product was not suitable for the purpose warranted; and (iv) the breach of the warranty caused the plaintiff's injuries. *Simon v. Coppola*, 876 P.2d 10, 15 (Colo. App.1993).

Defendant argues that the undisputed facts do not show that the chip was used for a particular purpose, but rather that Plaintiff "chose the Chip because its *ordinary use* was exactly what [Plaintiff] wanted" for the OmniTouch 7. *Motion* [#78] at 13 (emphasis added). In the Response [#93], Plaintiff argues that the chips were intended to be used in the OmniTouch 7 in a particular way, Defendant was told of that use, Defendant approved and commented on the design of the device, and Defendant suggested alternate configurations of the microphones for the device to work best with the chip. *Response* [#93] at 16.

Specifically, Plaintiff states that it had initially begun designing its device to use a chip made by Texas Instruments, but ultimately selected Defendant's chip instead because it included "Android drivers . . . noise cancellation, beam focusing, and design support." *Id.* at 3.

In support of its argument, Plaintiff relies on the Ghaemi Affidavit, as well as emails between various employees of Plaintiff and Defendant. *Id.* The Affidavit states that Defendant "approached" Plaintiff and "promised" that the purchase of its chip would "include additional services that were not offered by Texas Instruments such as Android drivers for the OmniTouch 7." *Ghaemi Affid.* [#93-1] ¶ 10. Mr. Ghaemi states that Plaintiff "chose the Conexant Chip for its additional features, even though the Conexant Chip was significantly more expensive than the Texas Instruments alternative (approximately 40% more)." *Id.* Additionally, Mr. Ghaemi explains that Plaintiff kept Defendant informed of the intended use of the chip, sought Defendant's review and approval of design schematics to make sure the chip would work properly in the device, and communicated regularly with Defendant's engineers. *Id.* ¶ 11. Mr. Ghaemi states that this exchange occurred "for nearly a year" before the March 26, 2013 Purchase Order was issued. *Id.* ¶ 14.

Plaintiff also cites to an email chain between Mr. Ghaemi and Rafael Parsegian ("Parsegian"), whose email address domain is "conexant.com." Mr. Ghaemi asked for "help to get the following [questions answered] to finish our design with the Conexant [chip]," stating the type of microphones Plaintiff planned to use and that the chip "must do the 'beam forming' and 'Noise & Echo Cancelation [*sic*].'" *See April 13-17, 2012 Emails* [#93-23] at 3. Mr. Parseigian responded with "schematics" to use as a reference in completing the design, in part confirming that "[Plaintiff] can use the digital Mics which our device supports," and confirming that "the device works with Windows inbox drivers and only they

will need to configure the device based on their needs and design as explained above."
*Id.*  In short, it appears that Mr. Ghaemi was asking for assurance that the chip would perform all of the functions required and operate properly in the OmniTouch 7, and Mr. Parseigian responded with such assurances.  Plaintiff also cites to an email chain from September 2013, in which Jim Nadolski, Defendant's Senior Field Applications Engineer, responded to an inquiry from Mr. Ghaemi regarding improvement of audio performance with a suggestion to change the placement of the microphones.  *See April 13-17, 2012 Emails* [#93-24] at 1-2.  The affidavit and emails taken together support Plaintiff's argument that Defendant contributed input in the process such that a jury could find that Plaintiff was "relying on the seller's skill or judgment to select or furnish suitable goods."  *See* Colo. Rev. Stat. § 4–2–315; *Anderson*, 477 U.S. at 248.  Because these are genuine disputes of material fact regarding the breach of warranty claim, entry of summary judgment in favor of Defendant on this claim is not warranted.

Accordingly, the Motion [#78] is **denied** with respect to Plaintiff's breach of warranty claim.

### 3.    Damages

Defendant separately raises several arguments challenging the damages sought by Plaintiff.  First, the Court addresses Defendant's argument that Plaintiff's damages were not caused by Defendant.  Specifically, Defendant argues that the devices were covered by a twelve-month warranty between Plaintiff and Leviton, and that the evidence shows that none of the devices failed during the warranty period.  *Motion* [#78] at 13-15.  Thus, Defendant contends that Plaintiff cannot recover from Defendant because Plaintiff

voluntarily decided to extend the warranty and repair the devices outside the initial twelve-month warranty period. *Id.* at 14.

It is undisputed that Plaintiff's past damages were incurred because it repaired devices outside of the initial twelve-month warranty period. However, Plaintiff argues that it was forced to extend its warranty in order to preserve its reputation in the industry. *Response* [#93] at 17; *Ghaemi Affid.* [#93-1] ¶ 22. Defendant avers that it is unclear what damages Plaintiff was attempting to mitigate because Leviton had already decided not to do future business with Plaintiff before any of the devices were returned. *Motion* [#78] at 14-15. Plaintiff responds that it was not concerned about preserving business opportunities with Leviton, but rather future business opportunities with other companies if it refused to repair devices that had an obvious problem, even though the devices malfunctioned outside of the twelve-month warranty.[10] Plaintiff avers that its customers needed to know that Plaintiff would do "the right thing" because it is a small industry in which "most involved in human interface product manufacturing and sale[s] likely knew that the OmniTouch 7 was designed and manufactured by [Plaintiff]." *Response* [#93] at 19; *Ghaemi Affid.* [#93-1] ¶ 23.

"[T]he non-breaching party in a contract is under a duty to use reasonable means to avoid loss and damage." *Hoehne Ditch Co. v. John Flood Ditch Co.*, 76 Colo. 500, 233 P. 167 (1925). A plaintiff "is entitled to recover as consequential damages, expenses and other costs incurred in taking reasonable steps to mitigate damages." *Gundersons, Inc.*

---

[10] Similarly, Defendant argues that Plaintiff cannot meet its burden of proof on its claim for damages based on losing future business with Leviton. *Motion* [#78] at 15. However, Plaintiff clarifies that its damages for lost profits are based on lost opportunities with companies other than Leviton. *Response* [#93] at 21.

*v. Tull*, 678 P.2d 1061 (Colo. App. 1983), *aff'd in part, rev'd in part on other grounds*, 709 P.2d 940 (Colo. 2002); *Prutch v. Ford Motor Co.*, 618 P.2d 657, 662 (Colo. 1980) (finding that plaintiffs increased their damages by planting more crops after discovering defect, but that defendant was still liable because plaintiffs were required to attempt to mitigate damages). Generally, the issue of what constitutes reasonable effort in mitigation of damages is a question of fact to be determined by the jury. *Fair v. Red Lion Inn*, 943 P.2d 431, 437 (Colo. 1997). Here, the question of whether Plaintiff was reasonable in attempting to mitigate its damages by extending the warranty is disputed. Because there is conflicting evidence on the issue, the Court finds that entry of summary judgment on this issue would be inappropriate. *See Anderson*, 477 U.S. at 248.

Next, Defendant disputes Plaintiff's "supplemented" Rule 26 disclosures that added a claim for $7,943,673 in alleged "cost of reputation damages." *Motion* [#78] at 15. Defendant argues that "reputation damages" is a misnomer, and that this claim actually pertains to lost profits on additional sales that Plaintiff argues it would have made for other devices based on the same chip. *Id.* Defendant argues that this claim for damages fails because Defendant was only obligated to sell 10,400 chips to Plaintiff, and Plaintiff therefore cannot claim "lost profits" on devices that could have been sold only if Defendant had agreed to sell more chips. *Id.* Defendant also argues that Plaintiff's claims for lost profits are "pure speculation." *Id.* at 17. Plaintiff responds that there are questions of fact here with respect to whether Defendant would likely have continued to sell the chip to Plaintiff but for the current dispute, whether Plaintiff alternatively could have obtained the chip through third-party vendors, and whether Plaintiff's lost profits damages are speculative. *Response* [#93] at 22.

The Court notes Defendant's argument that cases have held "that a party cannot recover lost profits that are dependent on the plaintiff's ability to purchase products when the seller has no obligation to sell." *See Motion* [#78] at 16 (quoting *Navistar Int'l Corp. v. Hagie Mfg. Co.*, 662 F. Supp. 1207 (N.D. Ill. 1987); *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales*, 729 F.2d 1530 (5th Cir. 1984)). However, these cases from the Northern District of Illinois and the Fifth Circuit Court of Appeals are not binding in this jurisdiction. Additionally, here, Plaintiff asserts that it could have obtained the chips from another source. *Ghaemi Affid.* [#93-1] ¶ 37. The undisputed facts that Plaintiff delivered 10,000 OmniTouch 7's to Leviton for sale and that a certain number of devices were sold show that the device was marketable, and a jury could conclude that Defendant would have continued providing the chips to Plaintiff absent the alleged defect. *See Technics, LLC v. Acoustic Mktg. Research Inc.*, 179 P.3d 123, 128 (Colo. App. 2007), *aff'd*, 198 P.3d 96 (Colo. 2008) (finding that trial expert's testimony regarding future profits based on profitability at current cost was not speculative, even though it was not mathematically certain). Plaintiff has provided an estimate of lost future profits that is substantively sparse and lists three anonymous "Manufacturing contracts" that it alleges were lost due to the chip defect. *See Summary of Estimated Damages* [#93-19] at 10. While the Summary of Estimated Damages itself is unclear and unconvincing, during his deposition, Mr. Streicher named the three companies with whom Plaintiff now asserts that it lost contracts. *Streicher Depo.* [#102-1] at 5.[11] The Court finds that the Summary of Estimated Damages in conjunction

---

[11] The Court notes that it is Plaintiff's obligation to support its arguments by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c). Thus, the Court was not required to consider this evidence.

with Mr. Streicher's testimony is sufficient at this stage to create a material issue of fact precluding summary judgment. *See Hatlee v. Hardey*, No. 13-CV-02469-RM-MJW, 2015 WL 5719644, at *19 (D. Colo. Sept. 29, 2015) (finding that interrogatory responses indicating "opinions of economic losses" were sufficient to survive summary judgment); *Lippoldt v. Cole*, 468 F.3d 1204, 1220 (10th Cir. 2006) (stating that the "amount of damages is a finding of fact").

Accordingly, with respect to Defendant's arguments regarding causation and lost profits, the Motion [#78] is **denied**.[12]

### 4. Effect of Settlement Agreement Between Leviton and Defendant

Plaintiff asserts that it is entitled to recover damages based on future warranty repairs to the devices sold to Leviton. *Compl.* [#2] ¶¶ 23, 24. Defendant asserts that, pursuant to the June 9, 2017 Settlement Agreement entered into between Leviton and Defendant, Plaintiff has been released "from any other obligations that [it] may have to repair and/or replace any . . . Leviton Device due to any defect or noise caused by any Conexant Chip . . . ." *Motion* [#78] at 8; *Settlement Agreement* [#79-20]. Plaintiff argues in the Response [#93] that the Settlement Agreement is a "limited release" and does not, for example, release Plaintiff from "any and all warranty obligations it may have to Leviton that involve the Conexant Chip." *Response* [#93] at 24. Thus, while Plaintiff does not dispute the existence of the Settlement Agreement, it disputes the extent to which the agreement relieves Plaintiff of its future repair obligations.

---

[12] In the Motion in Limine to Exclude Testimony and Evidence Related to Untimely Disclosed Damages [#94], Defendant raises additional arguments regarding various types of damages sought by Plaintiff. Those arguments will be addressed in a separate order.

The primary goal of contract interpretation is to give effect to the written expression of the parties' intent. *Ad Two, Inc. v. City & Cty. of Denver*, 9 P.3d 373, 376 (Colo. 2000). Interpretation of a contract is a question of fact only when a contract term is found to be ambiguous. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909 (Colo. 1996). The provisions of a contract are ambiguous when they are subject to more than one reasonable interpretation. *Union Ins. Co. v. Houtz*, 883 P.2d 1057 (Colo. 1994).

This case arises out of Plaintiff's allegation that Defendant's chips are defective because they emit a "loud buzzing noise." *Compl.* [#2] ¶ 14(a). The plain language of the Settlement Agreement releases Plaintiff from any necessary future repairs to Leviton devices "due to any **defect <u>or</u> noise**" caused by the chips. *Settlement Agreement* [#79-20] (emphasis added). Thus, if Defendant prevails with respect to its position that the chips are not "defective," the Settlement Agreement makes clear that Plaintiff would still not be liable to Leviton for any future repairs due to any "noise." *Id.* Although Plaintiff appears to be correct that it was not released from "any and all warranty obligations," Plaintiff has not alleged any other possible defects in the chips.

Accordingly, with respect to Plaintiff's claims for damages based on possible future warranty repairs, the Motion [#78] is **granted**.

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#78] is **GRANTED in part** and **DENIED in part**. Partial summary judgment is entered in favor of Defendant with respect to Plaintiff's claim for future warranty repair damages.

Dated:  November 22, 2017

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge