IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00163-KLM

ZYKRONIX, INC., a Colorado corporation,

    Plaintiff,

v.

CONEXANT SYSTEMS, INC., a Delaware corporation,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Exclude Opinions and Testimony of Kyle Jacobson and Frank Muscolino Under Fed. R. Evid. 702 and Daubert** [#69][1] (the "Motion"). Plaintiff filed a Response [#87] in opposition to the Motion, and Defendant filed a Reply [#99]. The Court has reviewed the briefing, the exhibits, the entire case file and the applicable law, and is fully advised in the premises. For the reasons set forth below, the Motion [#69] is **GRANTED in part** and **DENIED in part**.

**I. Summary**

Plaintiff Zykronix, Inc. ("Plaintiff") is a Colorado corporation doing business in Colorado and Taiwan. *Joint Amendment to Section 4 of the Scheduling Order* [#46]. Defendant Conexant Systems, Inc. ("Defendant") is a Delaware corporation doing business

---

[1] "[#69]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

in California whose registered agent is in Colorado. *Id.* Defendant was authorized to do business in Colorado until June 30, 2015. *Id.* In early 2012, Plaintiff entered into an agreement with a third-party named Home Automation, Inc. ("HAI"), pursuant to which Plaintiff agreed to design and manufacture for HAI a home automation product later called the OmniTouch 7. *Motion* [#69] at 2-3. HAI was later acquired by Leviton Manufacturing, Co. Ltd. ("Leviton"). *Id.* at 2 n.2. Plaintiff met with Defendant because it needed an audio chip for the OmniTouch 7. *Id.* at 2-3. In March 2013, Plaintiff ordered approximately 10,000 chips. *Id.* Plaintiff delivered the OmniTouch 7 devices, including the chips, to Leviton for sale to customers. *Id.* Eventually, a loud buzzing noise was discovered in some of the devices. *Id.* Plaintiff alleges that the noise originates from the chips, and that, as of May 8, 2017, Leviton had returned 540 devices that emitted the noise. *Id.* at 6; *Pl. Am. Responses to Def. First Set of Interrogatories to Pl.* [#70-8] at 3.

Plaintiff offers the expert opinions of Frank Muscolino ("Muscolino") and Kyle Jacobson ("Jacobson"). Mr. Muscolino states that he is a semi-conductor industry veteran, and Defendant seeks to exclude Mr. Muscolino's anticipated testimony that the chip "is defective and failed in the OmniTouch 7." Mr. Jacobson is a Certified Public Accountant ("CPA"), who intends to testify regarding the reasonableness of certain damage calculations, as well as inflation and discount rates with respect to future lost profits. Defendant raises a number of arguments regarding why Mr. Jacobson's testimony should be excluded, which will be discussed below.

## II. Legal Standards

"Admission at trial of expert testimony is governed by Fed. R. Evid. 702, which imposes on the district court a gatekeeper function to 'ensure that any and all scientific

testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 provides the foundational requirements for admission of expert opinions:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The district court's discretion in admitting or excluding expert testimony under *Daubert* is broad, "both in deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003).

"[B]efore admitting expert testimony, the trial court must make certain findings to fulfill its gatekeeper role under Rule 702." *United States v. Yeley-Davis*, 632 F.3d 673, 684 (10th Cir. 2011). In deciding whether an expert opinion is admissible, the district court conducts a two-step analysis: (1) the court must determine whether the expert is qualified to give the proffered opinion, and (2) the Court must examine whether the opinion is reliable. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).

Regarding qualifications, "the court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion." *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133 (10th Cir. 2009) (quoting Fed. R. Evid. 702). Any one

of these qualifications can be sufficient to support a finding that an expert is qualified. *See* Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendments.[2]  However, in some fields, experience alone is the "predominant, if not sole, basis for a great deal of reliable expert testimony." *Id.* "Acceptance or rejection of an expert witness's qualifications is a matter within the discretion of the trial court." *United States v. Dysart*, 705 F.2d 1247, 1251 (10th Cir. 1983). "Neither Rule 702 nor any other rule or precedent . . . sets forth a specific method by which the trial judge must determine the qualification of an expert." *Id.*

Rule 702 also requires that the means or method by which the testimony or opinion is derived be reliable. As such, as referenced above, the Rule sets out three specific requirements to establish reliability: (1) a showing that the "testimony is based upon sufficient facts or data," (2) a showing that "the testimony is the product of reliable principles and methods," and (3) a showing that "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). The court reaches this second step of the analysis only if it determines that a witness is qualified. *See Yeley-Davis*, 632 F.3d at 684. This step of the analysis "requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge*, 328 F.3d at 1221.

Finally, even if an expert is deemed qualified and his or her opinions are considered reliable, the opinion must be relevant to be admissible. That is, the Court must consider

---

[2] Because the witness' qualifications must relate to the opinions offered in the present case, the fact that the witness has given expert testimony in other cases is not relevant unless the testimony was of the same nature using the same methodology.

"whether expert testimony . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (citation omitted). Courts have routinely excluded expert testimony that was based on nothing more than speculation. *See, e.g., Jetcraft Corp. v. Flight Safety Int'l*, 16 F.3d 362, 366 (10th Cir. 1993) (expert testimony excluded as professional speculation); *Eastridge Dev. Co. v. Halpert Assoc., Inc.*, 853 F.2d 772, 783 (10th Cir. 1988) (expert testimony excluded as "tentative and speculative"). However, "[d]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong facts such as time or surprise favoring exclusions." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1083 (D. Colo. 2006) (quoting *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994)).

The proponent of expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1107 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 592 n.10). The proponent is not required to prove that the opinion is indisputably correct or even that the expert's theory is generally accepted in the scientific community. *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999). Instead, the proponent must show that the witness has sufficient expertise to choose and apply a methodology, that the methodology was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied. *Id.*; *Daubert*, 509 U.S. at 595; *see also Dodge*, 328 F.3d at 1222. The burden on the proponent of the expert testimony is significant, as any inadequacy in the proof regarding any of Rule 702's elements may render the entire opinion inadmissible. *See Mitchell*, 165 F.3d at 782.

### III. Analysis

**A. Frank Muscolino**

Defendant does not challenge Mr. Muscolino's qualifications, which the Court therefore does not address. Rather, Defendant seeks to exclude Mr. Muscolino's testimony that the chip "is defective and failed in the OmniTouch 7." *Motion* [#69] at 17. Defendant argues that Mr. Muscolino did nothing to "meaningfully evaluate" either the OmniTouch 7 device, or the chip's role in the buzzing noise. *Id.*

Plaintiff argues that the Court should not consider Defendant's argument because Defendant "has not put forth its own expert opinion to demonstrate that Mr. Muscolino's methodologies are not generally recognized in the field. . . . This is not sufficient." *Response* [#87]. However, Defendant's contention is not that Mr. Muscolino's methodology was insufficient, but that no methodology underlying his opinion has been provided. *Reply* [#99] at 6. It is within the Court's purview to consider whether any methodology was applied reliably here. *See Daubert*, 509 U.S. at 595; *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) ("[A] trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions.") (citing *Daubert*, 509 U.S. at 595). Plaintiff has not directed the Court to any explanation of the methodology that Mr. Muscolino employed in reaching the conclusion that the chip "is defective and failed in the OmniTouch 7." Even if the Court considers Mr. Muscolino's deposition testimony excerpt provided by Plaintiff in the Response [#87],[3] that

---

[3] Defendant contends that the deposition testimony should not be considered because Plaintiff did not attach a signed court reporter's certificate. Defendant does not cite to any legal authority in support of its position. For the purposes of the Motion [#69], the Court assumes, without deciding, that it may consider the excerpt.

testimony does not state what methodology was used to reach the conclusion that the chip is defective. At most, Mr. Muscolino testified that he believes the problem was "oxide breakdowns" or "hot electron injection," but he does not describe how he arrived at those conclusions. *Response* [#87] at 13. In the Motion [#69], Defendant references Mr. Muscolino's testimony stating that he "took a look" at the device, plugged it in, and determined that it was defective because "it was buzzing rather loudly." *Motion* [#69] at 17. However, this part of the testimony also does not clarify how Mr. Muscolino determined that it was the chip, as opposed to some other component of the device, that was defective.

Mr. Muscolino's testimony is inadequate to establish that his opinion is reliable under Rule 702(c) because he has failed to explain the methodology used to reach his conclusions. Accordingly, Mr. Muscolino will not be permitted to provide testimony that the chip "is defective and failed in the OmniTouch 7."

**B.    Kyle Jacobson**

The Court first notes that, with respect to Mr. Jacobson, Defendant seeks to exclude testimony related to categories of damages that have since been renamed or restructured. *See Pl. Am. F.R.C.P. 26(a)(1) Disclosures* [#130-2]. The Court therefore generally addresses Defendant's disputed arguments rather than categorizing them strictly by category of damages as divided in the Motion [#69].[4]

First, Defendant argues that Mr. Jacobson should not be permitted to testify regarding past warranty repair costs because it is "nothing more than a simple mathematical exercise of taking unit repair cost figures provided by [Plaintiff] and

---

[4] The Court also does not address the categories of damages that Plaintiff stipulates are not at issue with respect to Mr. Jacobson's testimony.

multiplying the unit costs by the number of devices that were repaired." *Motion* [#69] at 9. Defendant also contends that Mr. Jacobson, as a CPA, is not qualified to testify with respect to the reasonableness of past repair costs.[5] *Id.* at 10.

Plaintiff responds that Mr. Jacobson is qualified because he is "a CPA who has worked with numerous businesses over his twenty-five years of experience . . . ." *Response* [#87] at 9. According to his curriculum vitae, Mr. Jacobson's experience includes supervising and performing financial audits (including for "high technology" and "manufacturing" companies), analyzing financial and operational data, and determining lost profits in other lawsuits. *See* [#87-2] at 35. Mr. Jacobson appears to be in a position to have specialized knowledge and experience beyond what an ordinary person would possess with respect to these topics, and the Court therefore concludes that Mr. Jacobson is qualified to testify. *See Milne,* 575 F.3d at 1133.

Thus, the Court considers Defendant's argument that Mr. Jacobson's testimony would not be of use to the jury because he merely offers elementary calculations. Plaintiff argues that Mr. Jacobson is not simply performing a calculation, but rather plans to testify regarding the reasonableness of the underlying data. *Response* [#87] at 9. For example, Mr. Jacobson testified in his deposition that the hourly rates for engineers and office personnel provided by Plaintiff in its damages calculation are reasonable. *Id.* The Court

---

[5] Defendant also points to two state court orders that purportedly demonstrate that Mr. Jacobson's testimony and/or reports have been stricken before. One order shows that a motion to strike Mr. Jacobson's opinion was granted, without giving any further explanation. *State Court Order* [#71-3] at 2. The other order shows that a motion in limine to exclude the "Jacobson testimony" was "Granted as to report and schedules, Denied as to [his] ability to testify." *State Court Order* [#71-4] at 2. Not only is the order unclear as to whether "Jacobson" is the same person as the expert at issue here, but "Jacobson" was apparently permitted to testify and no rationale is given regarding the decision to exclude the "report and schedules." The Court does not find these orders persuasive.

finds that such information could assist the jury in assessing the reasonableness of damages. *See Cook*, 580 F. Supp. 2d at 1083 ("Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong facts such as time or surprise favoring exclusions."). As Plaintiff argues, Mr. Jacobson's opinions may still be challenged through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof. . . ." *See Daubert*, 509 U.S. at 596. Accordingly, Mr. Jacobson will be permitted to testify with respect to past costs associated with warranty repairs.

The remaining challenges to Mr. Jacobson's testimony pertain to projected future costs. With respect to future warranty repair damages, Defendant argues that the category of damages fails as a matter of law because Plaintiff has been released from any such obligation pursuant to a settlement agreement reached between Defendant and Leviton. *Reply* [#99] at 4. In fact, this category of damages was dismissed by the Court for that reason on November 22, 2017, after briefing on the present Motion [#69] had already concluded. *Order* [#109] at 20-21. Plaintiff "acknowledges the Court's Order regarding future warranty repair damages," yet states that it has filed a motion in limine that, if granted, would preclude Defendant from introducing evidence of the settlement agreement. *Pl. Am. F.R.C.P. 26(a)(1) Disclosures* [#130-2] at 2 n.1. However, whether the settlement agreement is introduced into evidence or not, the law of the case is that future warranty repair damages are not permissible. *See Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1240 (10th Cir. 2016) ("Law of the case doctrine permits a court to decline the invitation to reconsider issues already resolved earlier in the life of a litigation."). Plaintiff has not sought reconsideration of the Court's prior ruling. Thus, Mr. Jacobson's testimony

related to future warranty repair damages shall be excluded.

Lastly, Defendant seeks to exclude Mr. Jacobson's testimony regarding the formerly named categories "Additional 10,000 Units of the OT7" and "22,000 Units of the 4.7 Inch Touch Screen Product,"[6] because Defendant believes that Plaintiff has abandoned these categories of damages due to Plaintiff's statement that it "does not contend that it necessarily lost future business to Leviton as a direct result of the failure of the . . . Chip." *Reply* [#99] at 5. However, considering the briefing on, and attachments to, various motions in the record, it appears to the Court that Plaintiff's alleged lost profits are related to contracts with other third-parties, not Leviton. *See Summary of Damages* [#130-3] at 9 (naming alleged lost profits with respect to contracts with two other third-parties). Furthermore, Plaintiff continues to seek damages for lost profits. *Id.* Thus, Defendant's argument that Plaintiff has abandoned those categories of damages is not persuasive and the Court sees no other reason why Mr. Jacobson should not be permitted to testify with respect to interest and discount rates applied to future lost profits.

Accordingly, Mr. Jacobson's testimony related to future warranty repair damages shall be excluded. Mr. Jacobson will be permitted to testify with respect to past costs associated with warranty repairs, and with respect to interest and discount rates applied to future lost profits.

### III. Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#69] is **GRANTED in part** and **DENIED**

---

[6] These are categories of devices that Plaintiff believes it "could have produced and delivered" if not for the defective chip. *See Jacobson's Report* [#87-2] at 21.

**in part**. The Motion [#69] is **granted** to the extent that Mr. Muscolino will not be permitted to provide testimony that the chip "is defective and failed in the OmniTouch 7," and Mr. Jacobson will not be permitted to provide testimony related to future warranty repair damages. The Motion [#69] is **denied** with respect to Defendant's request to limit Mr. Jacobson's testimony regarding past warranty repair costs and the interest and discount rates applied to future lost profits.

Dated: March 22, 2018

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge