IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00163-KLM

ZYKRONIX, INC., a Colorado corporation,

    Plaintiff,

v.

CONEXANT SYSTEMS, INC., a Delaware corporation,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motions in Limine** [#108][1] (the "Motions"). Defendant filed a collective Response [#113] in opposition to the Motions [#108], and Plaintiff filed a Reply [#120]. Additionally, the parties filed the Joint Status Report [#152] pursuant to Court Order [#149]. The Court has reviewed the briefing, the entire case file, and the applicable law, and is sufficiently advised in the premises. Each individual motion is addressed in turn.

**I. Background**

Plaintiff Zykronix, Inc. ("Plaintiff") is a Colorado corporation doing business in Colorado and Taiwan. *Joint Amendment to Section 4 of the Scheduling Order* [#46]. Defendant Conexant Systems, Inc. ("Defendant") is a Delaware corporation doing business

---

[1] "[#108]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

in California whose registered agent is in Colorado. *Id.* In early 2012, Plaintiff entered into an agreement with a third-party named Home Automation, Inc. ("HAI"), pursuant to which Plaintiff agreed to design and manufacture for HAI a home automation product called the OmniTouch 7. *Motion* [#69] at 2-3. HAI was later acquired by Leviton Manufacturing, Co. Ltd. ("Leviton"). *Id.* at 2 n.2.

Plaintiff met with Defendant because it needed an audio chip for the OmniTouch 7. *Id.* at 2-3. In March 2013, Plaintiff ordered approximately 10,000 chips. *Id.* Plaintiff delivered the OmniTouch 7 devices, including the chips, to Leviton for sale to customers. *Id.* Eventually, a loud buzzing noise was discovered in some of the devices. *Id.* Plaintiff alleges that the noise originates from the chips, and that, as of May 8, 2017, Leviton had returned 540 devices that emitted the noise. *Id.* at 6; *Pl. Am. Responses to Def. First Set of Interrogatories to Pl.* [#70-8] at 3. On June 9, 2017, Defendant entered into a Settlement Agreement with Leviton that agreed to release Plaintiff "from any other obligations that [it] may have to repair and/or replace any . . . Device due to any defect or noise caused by any Conexant chip." *Settlement Agreement* [#79-20].

## II. Legal Standard

"The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Martensen v. Koch*, No. 13-CV-02411-REB-CBS, 2015 WL 514913, at *2 (D. Colo. Feb. 6, 2015) (quoting *Mendelsohn v. Sprint/United Management Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008), *aff'd*, 402 F. App'x 337 (10th Cir. 2010)). Although motions in limine can save time when ruled on prior to trial, "a court is almost always better situated during

actual trial to assess the value and utility of evidence." *Id.*

## III. Analysis

**A.     Motion #1:  Settlement Agreement**

Plaintiff seeks to exclude evidence related to the Settlement Agreement between Defendant and third-party Leviton, including (1) general communications between Defendant and Leviton, and (2) the Settlement Agreement itself. *Motions* [#108] at 1-5. Plaintiff clarified in the Joint Status Report [#152] that "[b]esides informing the jury that [Defendant] has taken over all future repairs pursuant to the Settlement Agreement," Plaintiff believes that any evidence related to the Settlement Agreement is irrelevant, and that Defendant failed to produce a witness prepared to testify on that topic. *Joint Status Report* [#152] at 2.

The Court first considers relevance. Defendant explains that the failure rate of the chips is likely to be an issue at trial. *Id.* at 3. Thus, Defendant avers that it will present evidence that "since June 9, 2017 when [Defendant] and Leviton entered into the Settlement Agreement, Leviton has only returned 40 OmniTouch 7 devices." *Id.* at 4. While Defendant is entitled to challenge the alleged failure rate of the chips, Defendant fails to sufficiently explain how the contents of the Settlement Agreement and general communications related to the Settlement Agreement are relevant to the issue of the number of devices returned. In other words, the Settlement Agreement does not appear to have any bearing on the rate at which chips were returned for repair, or if it does, Defendant has failed to explain the connection. Thus, the Court does not find Defendant's argument convincing. Additionally, the Court notes that the actual Settlement Agreement

document is not needed for Defendant to establish the date on which it was signed.[2]

Defendant also argues that Plaintiff has put the Settlement Agreement at issue by stating in the Final Pretrial Order that two of its witnesses are expected to testify regarding "[Defendant's] agreement with Leviton regarding the repair of OmniTouch 7 devices." *Joint Status Report* [#152] at 4. Of course, Plaintiff may open the door to introduction of the Settlement Agreement into evidence by presenting its own evidence at trial. Because the Court cannot determine in advance of trial whether that will occur, Plaintiff's motion to exclude the Settlement Agreement is **DENIED without prejudice**.[3] Absent testimony inviting introduction of the Settlement Agreement into evidence, an objection to its admission based on relevance is likely to be sustained.

**B.       Motion #2: The "Terms and Conditions"**

Plaintiff seeks a Court order precluding Defendant from introducing any evidence or testimony related to Defendant's "Terms and Conditions" because a court has previously ruled on the issue of whether the Terms and Conditions constitute part of the contract between these parties. Plaintiff contends that several of Defendant's Affirmative Defenses should also be excluded. *Motions* [#108] at 6.

As Plaintiff argues, in March 2016, Defendant filed a Petition to Compel Arbitration for Complaint for Declaratory Relief in the U.S. District Court of the Central District of

---

[2] For example, a jury instruction covering the basic facts relating to the Settlement Agreement may accomplish the parties' respective goals without confusing or misleading the jury. The parties appear to agree that such a jury instruction may be appropriate. *See Joint Status Report* [#152] at 2, 4-5. However, that issue is more appropriately addressed at the Jury Instructions Conference set for April 26, 2018, at 1:30 p.m.

[3] Accordingly, the Court does not consider Plaintiff's argument regarding Defendant's alleged failure to produce a witness who was prepared to testify.

California.[4] *See California Court Order* [#108-6]. Defendant sought to compel arbitration based on language in the Terms and Conditions, [#108-5] at 16, which were included in an email Defendant sent to Plaintiff in response to Plaintiff's Purchase Order. *Id.* at 2. Before the California court, Defendant argued that the additional terms in the Terms and Conditions became part of the parties' contract because Plaintiff accepted the shipments of chips and did not object to or dispute the new terms. *Id.* at 6. The California court found against Defendant, holding that the Terms and Conditions did not become part of the operative contract because Plaintiff did not "give specific and unequivocal assent" to the additional terms as required by Section 2207 of the California Commercial Code. *Id.* at 7.

The Tenth Circuit has explained that issue preclusion applies when the following four elements are met:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (internal citation omitted). With respect to the first element, the issue of whether the Terms

---

[4] The Terms and Conditions provide that they are governed by California law. *See Terms and Conditions of Sale* [#108-5] at 16. However, this Court determined that the issues before it are governed by Colorado law. *Order* [#109] at 8. Defendant now states in a footnote that it "cited both California law and Colorado law in its Motion for Summary Judgment and has not conceded that Colorado substantive law applies." *Response* [#113] at 7. As the Court noted in the Order [#109], Plaintiff contended in its response that Colorado law applied, and Defendant did not contest that statement in its reply. *Order* [#109] at 8 n.8. The Court further finds Defendant's statement puzzling because it cited to Colorado law when defining various contract principles throughout the motion, and merely noted similarities between California and Colorado law in one subsection. *See, e.g.*, *Motion for Summary Judgment* [#78] at 12, 13, 14; 16-17. Notably, Defendant has never argued that any law other than Colorado law should apply in this matter. Thus, the Court sees no reason to reconsider its ruling.

and Conditions became part of the operative contract is the issue directly addressed by the California court. With respect to the second element, the California court's order on the motion to compel arbitration was a final adjudication that resolved all issues in the case. With respect to the third element, the same parties are involved in both actions. With respect to the fourth element, Defendant had a full and fair opportunity to brief the issues – and did so – in the California case. Accordingly, the Court finds that the matter of whether the Terms and Conditions are part of the contract at issue is precluded by the California court's ruling.[5]

On those grounds, Plaintiff states that several of Defendant's affirmative defenses should be precluded because they are based on the Terms and Conditions.[6] The Court agrees that the following defenses are precluded: the Second Defense (related to Plaintiff's failure to comply with "Dispute Resolution" provision of the Terms and Conditions),[7] and the Seventh Defense (a limitation on liability/damages stated in the Terms and Conditions). The Court does not rule on whether the Fifth Defense (related to disclaimer of implied warranties) should be precluded, as it is based in part on the March 27, 2012 Standard

---

[5] Defendant argues that this Court has distinguished the California ruling by saying the arbitration clause issue decided there "is not relevant to the issue currently before this Court." *Order* [#109] at 9. The Court did not intend to indicate that the parties are not bound by the California court's order, but rather that the question before the California court (whether the Order Acknowledgment and Terms and Conditions were part of a contract) differed from the question before this Court (whether the Purchase Order and subsequent shipment of goods constituted a contract).

[6] The Motion lists the defenses as they are numbered in the Answer [#48]. Here, however, the Court numbers them as provided in the Final Pretrial Order [#151]. The Court notes that the Defendant no longer asserts the defense based on the arbitration clause.

[7] This defense was also withdrawn by Defendant at the Final Pretrial Conference. *See Final Pretrial Order* [#151] at 7-8.

Mutual Non-Disclosure Agreement [#79-3], and Plaintiff explicitly has not taken a position on the admissibility of that document. *See Reply* [#120] at 6 ("[Plaintiff] did not raise the admissibility of the NDA in its Motion and therefore takes no position as to its admissibility at this time.").

Lastly, Defendant argues that, even if the Terms and Conditions are not part of the contract, they are still admissible. *Response* [#113] at 8. Defendant argues that they are admissible for the jury to consider "which terms are part of an agreement and which terms are not part of an agreement." *Id.* The California court has foreclosed any such consideration, as it held that the Terms and Conditions did not constitute terms of the contract whatsoever because Plaintiff did not agree to them. *See California Court Order* [#108-6] at 7. Thus, Defendant has not provided any basis for why the document should be admitted. Thus, Motion #2 is **GRANTED**.

## C. Motion #3: Evidence of Bankruptcy

The Court will not address Motion in Limine #3 with respect to evidence of Defendant's bankruptcy, as Plaintiff stated in the Joint Status Report [#152] that this is no longer at issue. *Joint Status Report* [#152] at 6. Motion #3 is deemed **WITHDRAWN**.

## D. Motion #4: Expert Testimony that Repair Cost is $50

Plaintiff seeks to preclude Nabeel Idrisi's ("Idrisi") testimony that it takes an hour and costs about $50 to replace the chip in each device. *Motions* [#108] at 8-9. Defendant correctly argues that this request is untimely, as the Court previously ordered that "[m]otions to exclude expert testimony must be filed thirty (30) days after the rebuttal expert witness disclosure deadline set forth in the Scheduling Order." [#43] at 2. Any motions to

exclude expert testimony were therefore due on or before August 31, 2017, and the Motion [#108] filed by Plaintiff on November 20, 2017, is untimely. Plaintiff also argues that "Mr. Idrisi should be barred from disclosing the third-party's statement" (an invoice indicating that the cost of repair was $50) on which he relied. *Motions* [#108] at 9. However, barring Mr. Idrisi from disclosing the statement still constitutes a challenge to expert testimony and is untimely.[8] Thus, Motion #4 seeking to exclude Mr. Idrisi's testimony is **DENIED**.

E.     **Motion #5: Evidence of Tests Not Produced**

Plaintiff contends that Defendant should be precluded from introducing into evidence any evidence of tests performed on the chips that were not previously produced. *Motions* [#108] at 9. Defendant argues:

> to the extent that [Defendant] has any documents that it did not produce because they were not responsive to [Plaintiff's] requests for production, [Defendant] is free to use those documents at trial. [Plaintiff] cannot prevent [Defendant] from using documents that [Plaintiff] never requested during the discovery period.

Plaintiff requested "all DOCUMENTS RELATED TO testing, examining, or analyzing the CHIP." *Pl. Second Set of RFPs* [#108-8] at 5. Thus, any such documents should have been produced to Plaintiff by Defendant. Additionally, Defendant's argument that it should be permitted to introduce evidence not previously produced is incorrect. Fed. R. Civ. P. 26(a)(1)(A) requires, with some exceptions inapplicable here, that a party must provide "a copy – or a description by category and location – of all documents, electronically stored

---

[8] Plaintiff raises a new argument in the Reply [#120] that on December 13, 2017 (two days after Defendant filed the Response [#113] to the Motions [#108]), Defendant "finally" produced the invoice and identified the third-party company. *Reply* [#120] at 8. As this issue was not raised – through no fault of Plaintiff's – until the Reply [#120], Defendant has not had an opportunity to respond. Thus, the Court declines to consider it at this time. However, the Court notes that it is unlikely to permit the introduction of evidence not properly disclosed pursuant to Fed. R. Civ. P. 26, as discussed in the following section.

information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ." The disclosures must be made "at or within 14 days after the parties' Rule 26(f) conference." Fed. R. Civ .P. 26(a)(1)(C). Furthermore, litigants' disclosure obligations do not cease after initial compliance with the Rule. "A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e). These rules apply regardless of whether the opposing party sought a discovery hearing on the issue. *See Response* [#113] at 16.

Under Rule 37(c)(1), if a party fails in its duty to disclose under Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at a trial, unless the failure was substantially justified or is harmless." Defendant has not argued that its failure to disclose responsive documents was substantially justified or is harmless. *See Response* [#113] at 15-16. Thus, Motion #5 is **GRANTED**.

F.     **Motion #6: Evidence that Other Chips Did Not Fail**

Plaintiff seeks to preclude Defendant from introducing "evidence or testimony that only a small percentage of its Chips where [*sic*] defective, 'failed,' or were otherwise returned by customers other than [Plaintiff]." *Motions* [#108] at 10. Plaintiff first argues that Defendant only produced a one-page document unsupported by further documentation related to this issue, and second argues that whether other customers reported defects is immaterial with respect to whether the chips provided *to Plaintiff* were defective. *Id.* at 10-11. However, Defendant states that it only plans to introduce evidence with respect to its

other customers "if [Plaintiff] is allowed to make arguments about the performance of the Chip generally," as opposed to arguments about the performance of the chips provided specifically to Plaintiff. *Response* [#113] at 17-18.[9] The Court is unlikely to permit evidence relating to failure of Defendant's chips in products other than those manufactured by Plaintiff. Nevertheless, it does not appear that this issue is ripe for review, and Motion #6 is **DENIED without prejudice**.

IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motions [#108] are **GRANTED in part** and **DENIED in part** as follows:

Motion #1 is **DENIED without prejudice**.

Motion #2 is **GRANTED**.

Motion #3 is deemed **WITHDRAWN**.

Motion #4 is **DENIED**.

Motion #5 is **GRANTED**.

Motion #6 is **DENIED without prejudice**.

BY THE COURT:

Dated: April 25, 2018

Kristen L. Mix
United States Magistrate Judge

---

[9] The Court also notes that the parties appear to agree that the issue should be limited to whether the chips provided to Plaintiff, as opposed to those provided to other customers, were defective. *See Motions* [#108] at 11; *Response* [#113] at 18.