IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00163-KLM

ZYKRONIX, INC., a Colorado corporation,

    Plaintiff,

v.

CONEXANT SYSTEMS, INC., a Delaware corporation,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Renewed Motion in Limine to Exclude Testimony and Evidence Related to Damages Claims** [#130][1] (the "Motion"). Plaintiff filed a Response [#136], and Defendant filed a Reply [#138]. The Court has reviewed the briefing, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#130] is **DENIED**.

**I. Background**

Defendant previously filed a Motion in Limine to Exclude Testimony and Evidence Related to Untimely Disclosed Damages [#94] on November 22, 2017. Defendant argued that Plaintiff newly disclosed nearly $9 million worth of damages on the day before the discovery cut-off. The Court found that it lacked sufficient information to rule on the merits

---

[1] "[#130]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

of Plaintiff's damages, and that resetting the trial and allowing additional discovery was the only way to cure potential prejudice to Defendant. *Order* [#110] at 6-7. The Court first ordered Plaintiff to provide a finalized computation of damages pursuant to Rule 26, and then permitted Defendant to tender to Plaintiff five interrogatories and five requests for admission, as well as the opportunity to take three depositions, and to endorse an additional expert regarding damages. *Minute Order* [#119] at 1-2. The Court also ordered Defendant to file any renewed motion to exclude testimony and/or evidence related to damages on or before February 1, 2018. *Id.* at 2.

On February 1, 2018, Defendant filed the present Motion [#130] requesting that the Court preclude Plaintiff from presenting testimony and evidence related to two categories of damages at trial. *Motion* [#130]. Defendant seeks to exclude Plaintiff's Category 3 ("Cost of Redesign of the Sole 4") and Category 6 ("Lost Profits") damages. *Id.*

## II. Legal Standard

"The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Martensen v. Koch*, No. 13-CV-02411-REB-CBS, 2015 WL 514913, at *2 (D. Colo. Feb. 6, 2015) (quoting *Mendelsohn v. Sprint/United Management Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008), *aff'd*, 402 F. App'x 337 (10th Cir. 2010)). Although motions in limine can save time when ruled on prior to trial, "a court is almost always better situated during actual trial to assess the value and utility of evidence." *Id.*

## III. Analysis

### A. Damage Categories Are "Outside the Scope" of the Complaint

Defendant first argues that the "Lost Profits" and "Redesign Costs" categories of damages should be excluded because they are outside the scope of the allegations in the Complaint. *Motion* [#130] at 6-10. Defendant contends that the Complaint [#2] solely pertains to the OmniTouch 7 (also referred to as the "Sole 7") device, yet Plaintiff's new "Lost Profits" category relates to lost sales of the Sole 3 and Sole 4, in addition to the OmniTouch 7. *Id.* at 7. Similarly, Plaintiff's new "Redesign of the Sole 4" category also pertains to a device not named in the Complaint [#2]. Lastly, Defendant contends that the Complaint [#2] only alleges one relevant customer, Leviton, whereas the basis of the "Lost Profits" damages category is contracts lost with other potential customers. *Id.* Defendant argues that these damages, which it contends are outside the scope of the Complaint [#2], constitute new legal theories and that Plaintiff should have sought leave to amend its pleadings to seek these categories of damages. *Id.* at 9.

In support of Defendant's argument regarding the scope of the Complaint [#2], Defendant cites to *Zokari v. Gates*, 561 F.3d 1076 (10th Cir. 2009). Defendant relies in particular on the following language from *Zokari*:

> In this circuit when a plaintiff attempts to add a new theory – a new cause of action – late in the game, the issue has not been whether the legal theory should be read into the complaint, but whether an amendment to the complaint should be permitted.

As Plaintiff argues, however, *Zokari* dealt with whether a party could add a new cause of action, as opposed to a new category of damages, without amending the pleadings.[2] *See*

---

[2] The plaintiff in *Zokari* raised a single cause of action for Title VII discrimination in the complaint, and then asserted a new claim for "unpaid wages" less than two weeks prior to trial. *Zokari*, 561 F.3d at 1082.

*Response* [#136] at 2-3. Defendant does not cite to any other legal authority supporting its argument that Plaintiff was required to amend its Complaint [#2] in order to seek new categories of damages. Furthermore, on considering whether to strike these categories previously, the Court determined that Fed. R. Civ. P. 26(a)(1)(A)(iii) applied, as it is the rule providing for "computation of each category of damages claimed by the disclosing party." *See Order* [#110] at 2. Pursuant to Rule 26, the Court determined that Plaintiff's late disclosure of the computation of each category of damages would prejudice Defendant if trial went forward as planned. *Id.* at 4. To cure the prejudice, the Court reset the trial and gave Defendant the opportunity to conduct further discovery related to damages. *Id.* Given that Defendant has not provided on-point legal authority to support its position, and that the Court previously determined that Rule 26 applies to timeliness of disclosures related to damages, the Court declines to exclude Plaintiff's damages categories on these grounds.

**B.     Lost Profits**

As an initial matter, Plaintiff argues that Defendant has already attempted the argument that Plaintiff's "lost profit" damages are speculative, and that the Court ruled that there was a material issue of fact precluding summary judgment. *Response* [#136] at 5. However, as Defendant contends, the Court's ruling issued before Plaintiff clarified the damages that it seeks, and also before Defendant engaged in discovery on those issues. *Reply* [#138] at 4. Defendant was permitted to file this Motion [#130] after conducting discovery. *Minute Order* [#119]. Thus, the Court will consider Defendant's substantive arguments.

A plaintiff must provide the following evidence to the trier of fact in order to seek lost profits: "(1) proof of the fact that damages will accrue in the future, and (2) sufficient

admissible evidence which would enable the trier of fact to compute a fair approximation of the loss." *Denny Const., Inc. v. City & Cty. of Denver ex rel. Bd. of Water Comm'rs*, 199 P.3d 742, 746 (Colo. 2009) (quoting *Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1382 (Colo. 1993)). "A claim for future profits may not be sustained by evidence which is speculative, remote, imaginary, or impossible of ascertainment." *Roberts v. Holland & Hart*, 857 P.2d 492, 496-97 (Colo. App. 1993) (citing *Lee v. Durango Music*, 355 P.2d 1083 (1960)). While documentary evidence of damages is preferred, "[d]amages can . . . be awarded based on undocumented testimony by the plaintiff or other witnesses." *Gibbons v. Ludlow*, 304 P.3d 239, 246 (Colo. 2013). Lost profits damages can be precluded as a matter of law if they are based on mere speculation. *Id.* at 248-49 (entering summary judgment against party because speculative evidence was insufficient to support lost profits damages). Nonetheless, "[a] plaintiff is not barred from recovery because the amount of damages cannot be established with mathematical certainty once the fact of damage has been established." *Roberts*, 857 P.2d at 496-97 (citations omitted).

Defendant contends that Plaintiff's "lost profits" damages theory is based on the following assumptions: (1) the chips failed; (2) if the chips had not failed, Plaintiff would have sold additional Sole 3, Sole 4, and Sole 7 devices; and (3) Plaintiff would have made a profit on the Sole 3, Sole 4, and Sole 7 devices. *Motion* [#130] at 11. Defendant first argues that Plaintiff's theory is speculative and unsupported because it has not provided any evidence regarding the number of devices that would have been sold, or the net profits it would have earned on lost sales. *Id.* Specifically, Plaintiff's Rule 30(b)(6) designee, Wilfried Streicher ("Streicher"), testified that no Sole 3 or Sole 4 devices had ever been sold, and admitted that he could not "reasonably calculate" the number of Sole devices that

would have been sold. *Motion* [#130] at 12-14. Defendant quotes from Mr. Streicher's deposition as follows:

> Q. How many Sole 3 devices does Zykronix believe it could have sold but for the Conexant chip problem?
>
> A. That can range. Anywhere from 5,000 to 10,000 to 25,000 units, depending on the size of the company or – I mean customer, that is approaching Zykronix. That is a hard – hard question to answer, but . . .
>
> Q. So you wouldn't be able to narrow it down any more than it could have been 5,000, it could have been 10,000, it could have been 20,000?
>
> A. No.
>
> Q. And if I ask you the same question for the Sole 4, would your answer be the same?
>
> A. Yes. I mean, I could make assumptions based on current sales of the Jazz series, which goes into the multiple thousands, but the answer is, yeah, that's – that's not something that can be reasonably calculated. It's just – it's an assumption.

*Streicher Depo.* [#130-5] at 8-9. Mr. Streicher also testified that Leviton was the only customer who purchased Sole 7 devices. *Id.* at 8. On these grounds, Defendant contends that the fact that Plaintiff suffered damages is speculative because the Sole devices failed in the market even before any alleged chip defect was discovered. *Motion* [#130] at 12. Defendant further argues that Plaintiff's sole support for its contention that it would have generated more contracts is the fact that the Sole line of devices won a "best product of the year" award. *Id.*; *Streicher Depo.* [#130-5] at 6-7 (testifying that he believed the award should have generated at least three new contracts because of "the interest, and also the communication with customers and even providing samples at one point to customers to sell it"). However, Plaintiff has not identified any customers who would have bought the devices. *Motion* [#130] at 13.

On these points, Plaintiff argues that its CEO, David Ghaemi ("Ghaemi"), will testify that Plaintiff suffered lost profits during the one-year redesign period caused by the chip failure. *Response* [#136] at 6. Plaintiff contends that Mr. Ghaemi will testify about contracts that Plaintiff entered into "with respect to the Sole Series"[3] that he believes would have been entered into a year earlier, and that additional contracts would have been obtained during that year, if not for the chip defect. *Response* [#136] at 6; *Ghaemi Aff.* [#93-1] ¶¶ 38-40. Plaintiff represents that Mr. Ghaemi will also testify regarding Plaintiff's average profit margin on contracts. *Ghaemi Aff.* [#93-1] ¶ 40 ("[Plaintiff's] average profit margin on its contracts is approximately 50%."). Additionally, Plaintiff argues that it presented the Sole devices to potential customers, but decided not to sell them as soon as it became aware of the problem with the device in December 2013. *Response* [#136] at 6; *Streicher Depo.* [#136-1] at 2-3. Plaintiff represents that the decision not to continue selling the devices was an effort to mitigate damages. *Id.* Mr. Streicher's testimony on this issue was as follows:

> . . . even though we didn't sell, because we couldn't, because of the chip failure, we did pitch the product – we did present it to customers. We sent samples to companies like QSC or Russound for this.
>
> But as the concerns grew more and more seriously on the Conexant chip failures, we basically had to delay and delay, and in essence ended up saying, well, there is a new product on the horizon. Why don't you wait until – until we have that. It is bigger, better, better technology, better panel, better touch screen, and you'll be really happy with that. But this was basically – yeah.
>
> I mean, basically, it cost us – it cost Zykronix a sales cycle for the Sole family of products. It forced the redesign and abandoning the Sole family of

---

[3] Defendant argues that the contracts to which Mr. Ghaemi is referring here are actually contracts related to the Jazz line of devices, not Sole. *Reply* [#138] at 4-5.

products, redesigning for Jazz family of product to move forward. Just so we're clear on the sample presentation. So Zykronix was active in marketing this product but had to abandon because of the chip failure.

*Streicher Depo.* [#136-1] at 2.

The Court first considers whether Plaintiff has provided evidence of the fact that damages occurred. *See Denny Const.*, 199 P.3d at 746. As explained above, the hurdle Plaintiff must overcome is that "the fact of damages cannot be based solely on speculations, guesses, or estimates." *See Roberts*, 857 P.2d at 496-97. Plaintiff contends that Mr. Ghaemi and Mr. Streicher's testimony supports its argument that the "best product of the year" award should have generated contracts, and that at least performance under the contracts entered into later with QSC and Russound could have begun earlier, had Plaintiff been in a position to sell the Sole devices. *Response* [#136] at 6-7. Inextricably intertwined with these considerations is Plaintiff's contention that it abandoned its marketing efforts and delayed selling to interested customers (namely, QSC and Russound) in an effort to mitigate damages. *Id.* Generally, the issue of what constitutes reasonable effort in mitigation of damages is a question of fact to be determined by the jury. *Fair v. Red Lion Inn*, 943 P.2d 431, 437 (Colo. 1997). Thus, while the evidence of lost profits damages may ultimately be found to be speculative, the Court concludes that at this stage, preclusion of testimony regarding the alleged occurrence of lost profit damages is not warranted.[4]

With respect to calculation of lost profits, Plaintiff must provide "sufficient admissible evidence which would enable the trier of fact to compute a fair approximation of the loss"

---

[4] Of course, Fed. R. Civ. P. 50(a) permits any party to make a motion for judgment as a matter of law if the opposing party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]"

see *Denny Const.*, 199 P.3d at 746, yet need not establish the amount with mathematical certainty, *see Roberts*, 857 P.2d at 496-97. Defendant again quotes Mr. Streicher:

> Q. Okay. Yeah. So my question is, can you say with reasonable certainty how many Sole 3 devices Zykronix could have sold but for the chip problem, the Conexant chip problem?
>
> A. I can tell you with reasonable certainty that sales would have been generated based on the success of the product, but due to the chip failure, that didn't happen.
>
> Q. But you wouldn't be able to quantify, with reasonable certainty, the number of Sole 3 devices you could have sold; is that right?
>
> A. There may have been verbal discussions with potential customers that I'm not privy to, but from my -- from my -- from what I know, the answer is yes. That's right.
>
> Q. And would the answer be the same for the Sole 4?
>
> A. Correct.
>
> Q. And would the answer be the same for the Sole 7?
>
> A. That is correct.

*Streicher Depo.* [#130-5] at 9-10. Thus, Defendant argues that Mr. Streicher admitted that Plaintiff's lost profits could not reasonably be calculated. Defendant contends that Plaintiff solely offers information about its contracts with customers QSC and Russound, which are contracts for Plaintiff's new "Jazz" line of devices that Defendant contends are different from, and much more costly than, the Sole devices. *Motion* [#130] at 15-16. Specifically, the Jazz devices sell to QSC for approximately $415-$428 per unit, and the Sole devices sold to Leviton for $216 per unit. *Streicher Depo.* [#130-5] at 13-14. Because of the price difference, Defendant contends that the alleged lost profits calculated based on Jazz devices are irrelevant to the question of lost profits with respect to the Sole devices. *Motion*

[#130] at 15-16; *Reply* [#138] at 6.  Defendant also asserts that, even if evidence of sales and profits on Jazz devices is relevant, it should be excluded because its probative value is outweighed by the fact that it would be prejudicial to Defendant, confuse the issues, and mislead the jury.  *Id.* at 16.

Plaintiff in turn argues that "both the Sole Series and the Jazz family of products are home automation devices that can electronically control aspects of the home environments," and that the Jazz devices "are simply the next generation of the same product."  *Response* [#136] at 8.  Plaintiff further argues that the trier of fact should determine whether to calculate lost profits based on the Jazz contracts, or based on the contract entered into with Leviton regarding the Sole 7.  *Id.* at 9.

The Court agrees with Plaintiff, at this stage of the litigation.  It remains to be seen at trial whether Plaintiff can provide evidence from which the jury can compute a fair approximation of its lost profits based on sales of other products.  Defendant is, of course, free to present evidence that the Jazz products are not comparable, and/or to pursue a motion under Fed. R. Civ. P. 50(a).  Accordingly, the Motion [#130] is **DENIED** with respect to lost profits damages.

**C.      Redesign Costs**

As an initial matter, Plaintiff argues that the Court previously found that there was conflicting evidence with respect to "Redesign Costs" damages, and that summary judgment therefore would be inappropriate. *Response* [#136] at 9. However, as Defendant contends, the Court's prior ruling dealt with other issues. Additionally, Defendant was given leave to file this Motion [#130] renewing its requests to exclude categories of damages.

*Minute Order* [#119].  Thus, the Court turns to the substantive arguments.

Defendant first argues that it did not cause Plaintiff's "Redesign Costs" damages because Plaintiff had to redesign its devices due to the fact that no customers ever purchased the Sole 3 or Sole 4 devices, even before any alleged chip defect was discovered.  *See Motion* [#130] at 17.  However, Plaintiff responds that, in order to mitigate damages, it stopped attempting to sell the devices once it realized there was a problem.  *Response* [#136] at 9-10 (referring to Mr. Streicher's deposition where he testified that Plaintiff had potential customers, yet Plaintiff "had to delay and delay" until the redesign).  As discussed above, the issue of what constitutes reasonable effort in mitigation of damages is a question of fact to be determined by the jury.  *See Fair*, 943 P.2d at 437 (Colo. 1997).  Thus, Defendant's contention that the devices "failed miserably in the market long before the loud buzzing noise issue ever arose," and that Defendant therefore is not responsible for Plaintiff's need to redesign the devices, is a disputed issue of fact that the Court declines to rule on at this time.  *See Motion* [#130] at 17.

Defendant next argues that the "Redesign Costs" damages category fails as a matter of law.  *Motion* [#130] at 17.  First, Defendant argues that "Mr. Ghaemi concedes that the new Jazz line of devices is not a redesign of the Sole devices; rather, the Jazz devices are 'improved drastically' compared to the Sole devices."  *Id.*  Defendant adds that Plaintiff "clearly has a much better device now," and that Plaintiff should not be permitted to recover "Redesign Costs" because Plaintiff is in a better position than if the contract had been performed.  *Id.* at 17-18.

Plaintiff disputes these points by arguing that it had to completely abandon the Sole family of products in favor of developing the Jazz line.  *Response* [#136] at 10.  Thus, in

that sense, Plaintiff argues that the Jazz line is a "redesign" of their previous products. Plaintiff further argues that it did not "benefit" in the manner Defendant asserts because Plaintiff lost a sales cycle of a line of products. *Id.* Plaintiff explains that it would normally "maintain [a] product for three, four, five years," but that the chip defect forced Plaintiff to lose the sales cycle for the Sole devices and instead redesign its product immediately. *Id.* Plaintiff further avers that it would have continued selling the device even during the redesign. *Id.*

As Defendant argues, Plaintiff's response indicates that the redesign of the product would have occurred no matter what – it is simply a question of *when* Plaintiff would have begun, if not for the alleged chip defect. *Reply* [#138] at 8. Plaintiff's response focuses on the loss of a sales cycle of their Sole devices, which fits more appropriately within the "lost profits" damages category discussed above. *Response* [#136] at 10. Although Plaintiff alleges that it was required to incur the costs of designing its next line of devices sooner than normally anticipated, it does not appear that Plaintiff should be entitled to recover redesign costs, where it would have engaged in that redesign at a later date regardless. Nevertheless, the question of whether Defendant's alleged wrongful conduct caused Plaintiff to incur redesign costs as an element of damages is one for the trier of fact, not the Court. *See Pioneer Centres Holding Co. Employee Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) (stating that "causation is generally a question of fact for the jury").

Accordingly, the Motion [#130] is **DENIED** with respect to proof of redesign costs.[5]

---

[5] Defendant also argues that Plaintiff "is required to reduce its alleged damages by the additional profits it makes on the new Jazz devices as opposed to the much smaller profits it earned

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#130] is **DENIED**.

Dated: April 27, 2018

BY THE COURT:

*(signature)*

Kristen L. Mix
United States Magistrate Judge

---

on the Sole devices." *See Motion* [#130] at 18.  Defendant contends that Plaintiff should have calculated the profit that it would have made on Sole devices and compared it to the profit it made on Jazz devices, and that Plaintiff violated its Rule 26 disclosure obligations for failing to do so. *Motion* [#130] at 18-19.  It is unclear from the information provided whether Plaintiff had any such obligation to reduce its damage calculation accordingly.  Nonetheless, Defendant may assert its arguments at trial, as the issue of calculation of damages is for the jury to determine.